Please call the next case. Okay, if the lawyers will please approach and introduce yourselves to the court, please. Your Honor, Adrian River on behalf of Appellant Tommy Jackson. Good morning, Janet Mahoney on behalf of the people of the State of Illinois. Okay, you may proceed. Good morning, Adrian River for Tommy Jackson. We address the issue, the first issue, whether the trial court should have granted the motion to quash, arrest, and suppress evidence, and of course the issue concerns the validity of the stop, a frisk of a person, and a frisk of the backpack. Why don't you, this is one of those cases that really, of course, turns on the facts of the case, and if you can, I'm not sure that you can, but if you can, take the facts in the light most favorable to the State and tell us what those facts are and why you think those facts simply did not permit or warrant an eventual search of the backpack and the recovery of the handgun. Well, I think there aren't any real factual disputes here. He was walking rapidly down the street. The police didn't stop. They came back, saw him walking again. At that time, he was paying attention to the squad car. They still didn't stop. They came back, and then he was standing on the corner not doing anything. The police exited the car. At that point, they say they hadn't spoken to him, and he started speaking, and they couldn't understand him. I think that's kind of vague testimony. Was it low volume? Was it rapid? But you have no problems with the officers actually stopping their vehicle and approaching the defendant? That was going to be what they termed was a field interview? There's nothing unlawful about police just pulling up, but the trial court did find, obviously, there was no probable cause to make an arrest or any at that time. Isn't this case like Illinois v. Wardlow? No, because he just moved backwards slightly. There was no flight here. There was no flight. I mean, he wasn't acting oddly ahead of time. And who removed the backpack from the individual? The officer who had frisked him. Did the officer state why it was necessary to remove the backpack in the course of what would have been initially simply a field interview? He just said he did a protective pat-down. It's very conclusory language. There wasn't anything specific about I had a fear, I saw something there. He made a movement towards the backpack. There was nothing like that. And by the time that the officer did a protective pat-down of the backpack, where was the defendant and what condition was he in? They didn't specify that he had moved. Was he handcuffed? Yes, he was handcuffed. There was another officer there still in the car. There wasn't a specific testimony about how close they were to each other. Why did the officer stop him in the first place? That's a good question. They don't say. They just said, we want to do a field interview. They didn't specify. I don't think there would be any. Well, if they didn't specify, then it must have been on the hunch of the officer, wasn't it? He had a hunch maybe this was a bad man.  That's all it could be, and that's not enough. So it doesn't fall within the criteria of Illinois v. Waterflow? To make a stop? I'm giving you a softball. You don't want to catch it. Well, I thought I answered it before. I mean, a stop has to be based on a reasonable suspicion of criminal activity and not a mere hunch. So that is not enough to stop him. And going back to taking the evidence of the like most favorable to the state, you point out that reasonable suspicion requires some criminal activity, and what criminal activity was identified by the officer in the course of his testimony? None whatsoever. None. It goes back to Justice Gordon's point that it was maybe no more than a hunch. Let's say a hunch is at the low end, and then at some point you get to reasonable suspicion. Does reasonable suspicion at least require an identification of some criminal activity? It has to be based on some particular facts. Articulable? Yes, specific articulable facts. Well, this was an area, a high crime or drug area, wasn't it? They did say that, but there's no fence. So why isn't that enough? Well, because there's no evidence that he was involved. If it were, everyone in that area would be subject to a terrorist attack? Of course. Right. I mean, people live in those areas, and they can't be subject to stop on that basis. So you need something more, and you say there's really nothing more here? There was nothing. No. And police, they said they wanted to do a field interview, but then they didn't ask him any questions. Why don't you save your time for your rebuttal, and let's hear what the State has to say about all this. Fine. Thank you. Good morning. Janet Mahoney on behalf of the people. Just to be clear, when the officers first stop their car, that is not a stop. They are entitled to get out of their car and even ask him his name. But as soon as they got out of the car, the defendant began to act bizarre, moving about, throwing his arms about, speaking without being spoken to in a way that they couldn't even understand what he was saying. There was something that was wrong here. And to expect the officers to walk away at this point would be unreasonable. What we expect is the officers at this point to identify that which gives them reasonable suspicion of criminal activity. So what did the officers say about that reasonable suspicion? Well, at a minimum, we have somebody who's disorderly. It's just after midnight. He's out on the street. He's acting bizarre. He's speaking incoherently. Can a defendant be disorderly in the presence of officers only when the officers pretty much trigger the encounter in a disorderly manner? Well, then what you're saying is that the officers didn't have the right to exit their car, because then that trigger list. They did. What we're talking about is whether what they observed reached that level of reasonable suspicion of criminal activity. And I'd like to know what your argument is that it did. Well, the officers were in fear for their safety. Why were they in fear for their safety? Because he was acting bizarre. And they were in fear for their safety. And it's not just that a criminal is. So was it simply a subjective fear, or were there objective observations that they made that caused them to be feared? Objective observations. It wasn't just the gut feeling. It was that he was moving his arms about. He was speaking incoherently. When they asked him to put his hands on the car, a reasonable request, he wouldn't do it. That's what I was hoping you'd bring up as well, because I'm not so sure that that's a reasonable request in a course of a field interview. Putting your hands on the car sounds like assume the position, which, you know, doesn't leave any other step to undertake but the search of the individual. Why would the officers ask him to put his hands on the car? Because they're in fear for their safety. So the fear for the safety came up before he was asked to put the hands on the car. Correct. Let's see your hands. I mean, it's a reasonable request when you're in fear for your safety that somebody's going to do something. You don't have to wait for them to shoot you. Why can't it simply be please keep your hands where I can see them as opposed to I want your hands on the hood of the car?  It's an easy way. It's a reasonable request. If the individual is putting his hands on the car, you know, my image is that the officer is standing behind the individual as opposed to in front of the individual, which might, in fact, make it more difficult to see where those hands are given that the officer is behind the individual. Given the chaos that was described here with this defendant, to request him to put his hands on the car, which would be a very simple way of keeping track of those hands, that we're afraid are going to do something that's going to harm us. So he didn't comply to the officer's satisfaction and he was handcuffed. He didn't comply at all. Okay. He didn't comply at all, although I heard he put one, I mean, I read that he put one hand on the car. He started playing games. The first request was and then he was playing games, playing games. The officer is nervous here and the officer has a right to do something. So he handcuffs him. So he handcuffs him. And by then the backpack is off the defendant. Yes, it is. And the defendant is secure and he certainly does impose the risk of possible harm to the officers that he might have posed before he was handcuffed. So the fear is gone. Well, not necessarily. They want to assess the situation. You mean the officer feared him in his handcuffs? They want to assess the situation to see if maybe this is just something that's gotten out of hand and we're going to let him go. But do you really want to let him go if he's got a gun on him? Do they know he has a gun on him? They don't. They're afraid he has a gun. But they have a hunch he has a gun. Because he's in that neighborhood, everybody has a gun. No, that's not what they said. That is not what they said. They were afraid based on his erratic behavior, his erratic behavior. Why did they stop the car? Why did they stop him? Well, they didn't stop him. They got out of their car and the stop was based on his erratic behavior. Did their erratic behavior start to occur when the officer stopped him or before the officer stopped him? Well, it was the erratic behavior that was the stop. Getting out of their car was not a stop. Simply the act of getting out of their car did not stop the defendant. As soon as they got out of the car, he began to act erratically and then they stopped him. But the act of getting out of your car does not mean that you've stopped him. Well, if you're mad, sometimes you act erratically. Is that true? I believe it was more than just anger. It was he was incoherent. He was flailing about. He was acting in a manner that threatened their safety. And a police officer in this situation should have a right to do something to protect their safety. Another justice in this appellate court in the first district shared a sentiment one time in a case. And I thought it was pretty compelling. Is this off the rack? Is this in a public? No, this is a sentiment. It's better to be tried by 12 than to be carried by 6. And that sentiment applies here. The goal of the Fourth Amendment in suppressing evidence is to alter police conduct that we don't like. Here's the problem with that. The problem with that is every case that comes before us, contraband was recovered. One of the cases where a stop and frisk, as they describe in New York City, is a matter of commonplace. Commonplace may be in those areas where there's high narcotics traffic and criminal activity. And in 99% of those stops and frisks, nothing is recovered so that no criminal proceedings ever ensue. But aren't the constitutional rights of those citizens nonetheless infringed? And in order to protect those who constitutional rights of those who are improperly infringed, because there is no criminal activity, we have to sometimes bar the police from using contraband that's recovered from someone who does have it. The goal of the Fourth Amendment is to alter the conduct of the police officers. This defendant was doing things that threatened their safety and also was disorderly. Let's go to the reasonable suspicion of criminal activity because you've already described one possible crime and that was disorderly. But what did the officers testify as to what their suspicion was of the criminal activity the defendant was engaged in at the time they performed Terry's stop? Well, it was their fear for their safety, which was their reasonable suspicion there was going to be a bad act. In a sense, the officers are creating their own criminal activity on the part of the defendant by having this subjective fear of safety so that they have a right now to perform that pat down? If the defendant had pulled out a gun and shot him, that would be criminal activity, wouldn't it be? Do we need to wait for them to pull out their gun and shoot the police officer to then justify the police officer's actions? Give me your best case, your best case that says the officers engaged in lawful conduct in this case. You know, these Fourth Amendment cases, they're really done on a case-by-case analysis. Well, the closest one to it. I can't give you one off the top of my head. All right. Thank you. That's it. And as for the backpack, in the search of the backpack, they did have it off of him. They had patted him down. If they were going to let him go, would it be reasonable to just hand him back to the police? Without just doing a minimally invasive pat of the backpack? It was pretty reasonable of them to just do that, because otherwise what was the point of the first pat down if you weren't going to pat down the backpack? But in order to do either, or in order to do both, it's fair for safety. It's fair for safety. And if they had walked away and been shot in the back, everyone would have said, how could they have done that? All they had to do was pat him down, and we wouldn't be here. All right. We ask that you affirm the convictions and sentences. Thank you. Just a couple points. The officers did not say that they were afraid based on erratic behavior. That was an argument the state made at the conclusion of the hearing, but the officer never specified that. As someone being incoherent, not being able to understand them, being weird, that doesn't equal a fear. That does not provide a reasonable fear for the officer's safety. He didn't make any attempt to hurt them. He didn't do anything to put them in fear, and they could have allayed their fears by interviewing them. Did the trial judge issue his findings of fact and conclusions of law pursuant to statute to enable this court to review the ultimate decision that he made of denying the defendant's motion to quash arrests? I don't think he made sufficient findings of fact here. He said that the pat-downs were reasonable and he didn't explain why. Okay. So I think there's nothing to defer to there. All right. I would ask this court to reverse. Thank you. Okay. Well, thank you very much for giving us this interesting case, and we'll take it under review.